**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Plaintiff, | : | Case No. 2:20-cr-00020 |
| vs. | : | Judge Graham |
| RICARDO MENDOZA-VENEGAS, | : | |
| Defendant. | : | |

**DEFENDANT'S RESPONSE TO GOVERNMENT SENTENCING MEMORANDUM**

**I.     INTRODUCTION**

Ricardo Mendoza-Venegas is before the Court for sentencing after pleading guilty to illegal reentry in violation of 8 U.S.C. § 1326(a) and (b)(1). The Probation Office has determined that Mr. Mendoza-Venegas has a Guidelines range of 8 to 14 months, with a total offense level 10 and criminal history category II. Pursuant to Fed. R. Crim. P. 11(c)(1)(C), the parties agree that a sentence of 8 to 10 months' imprisonment is sufficient but not greater than necessary to fulfill Congress' sentencing mandate.

The Government recently filed a Sentencing Memorandum urging the Court to accept the agreement of the parties and impose a sentence of 10 months. Mr. Mendoza-Venegas concurs with the Government's sentencing recommendation.

**II.    18 U.S.C. §3553(a) FACTORS**

*A) Nature and Circumstances of the Offense and History and Characteristics of the Defendant*

Ricardo Mendoza-Venegas was born in Nayarit, Mexico. He is one of three children born to his parents, Antonia Venegas-Chavez and Victor Mendoza-Garces. As noted by his mother, while he was still in school, Mr. Mendoza-Venegas worked a part-time job in the afternoon to help support his family. *See* Exhibit A, letter from Antonio Venegas-Chavez. When Mr. Mendoza-Venegas was 14 years old, his parents separated. It was near that time that Mr. Mendoza-Venegas left school so that he could work full time to help assist his mother.

Mr. Mendoza-Venegas was just 18 years old when he first came to the United States with hopes of supporting his family members in Mexico. Following his last deportation in 2014, Mr. Mendoza-Venegas remained in Mexico for five years. Ultimately, he made the regrettable decision to return the United States with the goal of assisting his mother, who is unable to work due to medical issues. Exhibit A.

Mr. Mendoza-Venegas was arrested on December 6, 2019, and taken into Immigration custody. On December 16, 2019, Mr. Mendoza-Venegas was transferred to the custody of the United States Marshals. Mr. Mendoza-Venegas agreed to waive his right to indictment and agreed to plead guilty in a timely fashion. He accepts complete responsibility for his offense.

### B) Just Punishment, Adequate Deterrence, Protection of the Public—18 U.S.C. § 3553(a)(2)(A)-(C)

Mr. Mendoza-Venegas has now been in custody at the Franklin County Corrections Center II (FCCCII) for nearly 10 months. Throughout the majority of his incarceration, the nation has been in the grips of a global pandemic. Mr. Mendoza-Venegas' time spent in the County jail has been under much more restrictive conditions than if he were in a federal, or even state, prison. Inmates in the local jail typically spend all but an hour or so of the day in their cellblock. There is no recreation yard, meaning, other than transport to and from Court, Mr. Mendoza has not stepped foot outside since December of last year.

Since the start of the COVID-19 pandemic, dozens of inmates and guards at FCCCII have become infected with the disease. Already strict conditions of confinement necessarily became even stricter in an effort to curb the spread of infection. For at least a two-week period of time, Mr. Mendoza-Venegas' cell block was on "movement restriction," in essence, quarantine, and no one was permitted to leave the cellblock for any period of time (except for medical reasons).

This period of incarceration has been much more difficult for Mr. Mendoza-Venegas than his prior terms of incarceration and has reinforced a message of deterrence. Once he finishes the sentence imposed

in this matter, he will be transferred to immigration custody to await deportation. In years past, deportation would occur quite promptly. However, since the start of the pandemic, undersigned counsel has had at least two clients who spent a month or longer in ICE custody subsequent to finishing their federal sentences.

The Court is at liberty to impose a term of supervised release of up to three years. If Mr. Mendoza-Venegas were foolish enough to illegally reenter the United States after he completes his prison sentence and he is deported, he could potentially be punished in two ways. First, his unlawful return would undoubtedly result in a new prosecution for his violation of 8 U.S.C. § 1326(a)(1) and (b). He would be subjected to maximum term of ten years' imprisonment.

Second, Mr. Mendoza-Venegas' illegal reentry would constitute new criminal conduct within the United States which would also trigger a supervised release revocation proceeding in this case if his illegal reentry occurred within the term of supervision. If Mr. Mendoza-Venegas reentered while still on supervision, his criminal history category would increase to at least category IV, and he would have guidelines of at least 15 to 21 months. Pursuant to 18 U.S.C. § 3583(e)(3), Mr. Mendoza-Venegas would face additional imprisonment. A new illegal reentry offense would constitute a Grade B violation (USSG § 7B1.1(a)(1)), resulting in revocation guidelines of 6 to 12 months (USSG § 7B1.4(a)). USSG § 7B1.3(f) would require the sentence on the supervised release violation to run consecutively to the sentence imposed on the new underlying criminal conviction. Regardless of the supervised release revocation guidelines, Mr. Mendoza-Venegas is aware that this Court would likely be inclined to sentence him to the maximum penalty of 24 months, consecutive to any term that might be imposed for a new offense of illegal reentry.

Mr. Mendoza-Venegas' primary concern now is to be reunited with his mother in Mexico, where he can provide her with needed support (financial and otherwise). He knows that if he returns to the United

States unlawfully in the future that he would face years, as opposed to months, in prison. He is unable to be of any assistance to his mother if incarcerated.

His knowledge of the severe future penalties that may be imposed, coupled with the penalty imposed for the instant offense, provides a strong incentive for him to remain in Mexico following his deportation and will protect the public from future crimes committed by this defendant. If this Court were to impose the requested sentence of 10 months, the seriousness of the offense would not be denigrated and both Mr. Mendoza-Venegas and others would be deterred from repeating his tragic mistakes. To be an effective deterrent, the sentence must not only educate defendants as to the seriousness of the offense, but should make others in the community "aware that similar actions will be punished." *United States v. Coleman*, 370 F. Supp. 2d 661, 681 (S.D. Ohio 2005), rev'd on other grounds, *United States v. White*, 551 F.3d 381 (6th Cir. 2008). To this end, others will be deterred from following in Mr. Mendoza-Venegas' footsteps given the particulars of his situation.

### C. The Need for the Sentence Imposed to Avoid Unwarranted Sentence Disparities Among Defendants with Similar Records Who have been Convicted of Similar Conduct—18 U.S.C. § 3553(a)(6)

In Fiscal Year 2019, 21,934 defendants, like Mr. Mendoza-Venegas, were sentenced under USSG §2L1.2 in federal courts. 2019 SOURCEBOOK OF FEDERAL SENTENCING STATISTICS, United States Sentencing Commission, at Table I-1. Of those defendants, 66.8% were sentenced within the applicable guideline range; approximately 30.7% were sentenced below the applicable guideline range by way of departure or variance. *Id.,* Table I-7. Only *0.4%* of defendants sentenced under §2K2.1 in 2019 were sentenced to above-guidelines sentences.

The 2019 Sentencing Statistics likely do not take into account the many illegal reentry defendants who plead guilty to misdemeanor violations under 8 U.S.C. §1325(a)(1) in "charge-bargain" districts (i.e. districts that incorporate misdemeanor plea offers into their Fast-Track programs), as the sentencing guidelines do not apply to convictions for Class B misdemeanors. *See* USSG §1B1.9. Therefore, it is

4

likely that a great number of illegal reentry defendants in "fast-track" districts receive sentences that represent, in essence, a downward variance from the guidelines they would face if they were convicted of violations of 8 U.S.C. § 1326.

In addition to this Court being charged with the duty of imposing a sentence that avoids unwarranted sentencing disparities, the United States Sentencing Commission is charged with the same duty. *Rita v. United States*, 551 U.S. 338, 348 (2007)(explaining that "[t]he upshot is that the sentencing statutes envision both the sentencing judge and the Commission as carrying out the same basic § 3553(a) objectives, the one, at retail, the other at wholesale").

> The purposes of the United States Sentencing Commission are to establish sentencing policies and practices for the Federal criminal justice system that. . . provide certainty and fairness in meeting the purposes of sentencing, avoiding unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar criminal conduct while maintaining sufficient flexibility to permit individualized sentences when warranted by mitigating or aggravating factors not taken into account in the establishment of general sentencing practices;

28 U.S.C. §991(b)(1)(B).

The applicable guideline range is 8 to 14 months. The parties are requesting a sentence within the guideline range. A sentence of 10 months would avoid sentencing disparities between Mr. Mendoza-Venegas and similarly situated defendants. For these reasons, Mr. Mendoza-Venegas respectfully submits that a sentence of 10 months is an appropriate sentence in this case.

**IV.    CONCLUSION**

Consideration of the circumstances of Mr. Mendoza-Venegas' offense, his history and characteristics, and the purposes of sentencing, demonstrates that a sentence of 10 months' incarceration would comply with the directives of 18 U.S.C. § 3553(a)(2). Furthermore, the requested sentence would avoid unwarranted sentencing disparities.

                                                Respectfully submitted,

                                                DEBORAH L. WILLIAMS
                                                FEDERAL PUBLIC DEFENDER

        /s/    Laura E. Byrum
Laura E. Byrum (VA Bar No. 48150)
Assistant Federal Public Defender
10 West Broad St., Suite 1020
Columbus, OH 43215-3469
Telephone: (614) 469-2999
Facsimile: (614) 469-5999
Laura_Byrum@fd.org

Attorney for Defendant
Ricardo Mendoza-Venegas

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

   /s/   Laura E. Byrum
Laura E. Byrum  (VA Bar #48150)
Assistant Federal Public Defender